# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **TERESA D. FORTNER,** | ) | |
| Plaintiff | ) | Case No. 1:05cv00024 |
| | ) | |
| **v.** | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Teresa D. Fortner, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for a period of widow's insurance benefits based on disability, ("DWIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 402(e) and 423(d) (West 2003 & Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

-1-

than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

Fortner protectively filed her application for DWIB on May 6, 2003, alleging that she became disabled on December 4, 1996, due to epilepsy, asthma, carpal tunnel syndrome, temporal mandibular joint pain, allergic rhinitis, back and leg pain and problems remembering and concentrating. (Record, ("R."), at 47-50, 54, 95.) The Commissioner denied Fortner's claim both initially and upon reconsideration. (R. at 29-31, 34, 35-37.) Fortner then requested a hearing before an administrative law judge, ("ALJ"). (R. at 38.) A hearing before an ALJ was held on June 16, 2004, at which Fortner was represented by counsel. (R. at 193-212.)

By decision dated October 4, 2004, the ALJ denied Fortner's claim. (R. at 14-21.) The ALJ found that Fortner met all of the nondisability requirements for widow's benefits beginning September 1, 1995, through September 30, 2002.[1] (R. at 20.) The ALJ found that Fortner had not engaged in substantial gainful activity since December 4, 1996. (R. at 20.) The ALJ also found that the medical evidence established that Fortner suffered from a severe impairment, namely a seizure disorder, but he found that Fortner did not have an impairment or combination of impairments listed at or

---

[1] To qualify for DWIB, an individual must show that she is the widow of a deceased wage earner, has attained age 50, is unmarried (with certain exceptions) and is under a disability which began no later than seven years after the wage earner's death or seven years after she was last entitled to survivor's benefits. *See* 20 C.F.R. § 404.335 (2005).

medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-21.) The ALJ found that Fortner's allegations were not totally credible. (R. at 21.) The ALJ found that Fortner retained the residual functional capacity to perform medium work[2] which did not require her to drive or work around heights or hazardous machinery and which did not require constant alertness or safety sensitive work. (R. at 18, 21.) The ALJ found that Fortner had no past relevant work experience. (R. at 21.) Based on Fortner's age, education and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Fortner could perform jobs existing in significant numbers in the national economy, including those of a cashier, a private household cleaner, a kitchen worker, a food preparer, a maid, an assembler, a hand packer, a nonconstruction laborer, a counter sales clerk, an interviewer, a factory messenger, a production inspector and a production machine tender. (R. at 21.) Thus, the ALJ found that Fortner was not disabled under the Act and was not eligible for DWIB benefits. (R. at 21.) *See* 20 C.F.R. § 404.1520(g) (2005).

After the ALJ issued his decision, Fortner pursued her administrative appeals, (R. at 9), but the Appeals Council denied her request for review. (R. at 4-6.) Fortner then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2005). The case is before this court on Fortner's motion for summary judgment filed July 28, 2005, and the Commissioner's motion for summary judgment filed August 29, 2005.

---

[2]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2005).

## II. Facts

Fortner was born in 1949, (R. at 47, 197), which classifies her as a person of advanced age. *See* 20 C.F.R. § 404.1563(e) (2005). Fortner has a high school education and no work experience. (R. at 60, 197-98.) Fortner testified at her hearing that she could stand a total of two hours without interruption and sit a total of two hours without interruption. (R. at 201.)

Medical expert, Dr. Theron Blickenstaff, M.D., also testified at Fortner's hearing. (R. at 203-05, 210.) Dr. Blickenstaff stated that the record documented a seizure disorder. (R. at 204.) He stated that as a result of the seizure disorder, Fortner could not drive on the job and she could not work around heights or hazardous machinery. (R. at 205.) He also stated that Fortner could not perform work that required constant alertness or safety sensitive work and that she was mildly limited in her ability to maintain attention and concentration. (R. at 205.) Dr. Blickenstaff deferred his opinion on Fortner's diagnosis of carpal tunnel syndrome until a report from Dr. Muhammad R. Javed, M.D., could be obtained. (R. at 204.)

Vocational expert, Robert Spangler, testified at Fortner's hearing. (R. at 205-11.) Spangler was asked to assume a hypothetical individual of Fortner's age, education and work history, who would be limited as indicated by Dr. Blickenstaff's testimony and who could perform medium work. (R. at 206-08.) Spangler testified that such an individual could perform the jobs of a cashier, a private household cleaner, a kitchen worker, a food preparer, a maid, an assembler, a hand packer, a nonconstruction laborer, a counter sales clerk, an interviewer, a factor messenger, a

production inspector and a production machine tender, all jobs that existed in significant numbers in the national economy. (R. at 208-09.)

In rendering his decision, the ALJ reviewed records from Dr. Thomas C. Greene, M.D.; Bristol Medical Associates; Dr. Muhammad R. Javed, M.D.; Bristol Regional Medical Center; Dr. Donald R. Williams, M.D., a state agency physician; Dr. David E. Thompson, M.D.; and Dr. Earl K. Wilson, M.D.

In November 1982, Dr. Earl K. Wilson, M.D., diagnosed Fortner with questionable complex partial and generalized seizures. (R. at 180-81.) An electroencephalogram, ("EEG"), was performed on March 31, 1989, to evaluate Fortner's seizures. (R. at 112.) The EEG was abnormal, indicating activities consistent with a seizure disorder. (R. at 112.) Fortner was prescribed medications and subsequent office visits indicate that Fortner's seizure disorder was controlled and stable. (R. at 171-76, 179.) In August 1989 and August 1990, Dr. Wilson reported that Fortner's gait and station were normal, as well as her motor and sensory functions and reflexes. (R. at 173, 175.) In June 1999, an electromyography, ("EMG"), of Fortner's right arm showed a wrist injury as seen in carpal tunnel syndrome. (R. at 167-70.)

The record shows that Fortner saw Dr. Thomas C. Greene, M.D., for complaints of low back pain in September 2000 and January 2001. (R. at 126-27.) X-rays of Fortner's lumbar spine showed some osteophytic changes at the L2-L3 level. (R. at 138.) She was diagnosed with lumbar spine pain. (R. at 126-27.) In February 2001, Dr. Greene diagnosed nasal allergies. (R. at 125.) On March 1, 2001, Fortner complained of right flank pain and a right thumb cyst. (R. at 116.) Fortner reported

occasional asthma associated with viral syndromes. (R. at 116.) An ultrasound of Fortner's gallbladder was positive. (R. at 116, 134.) Dr. Greene diagnosed cholelithiasis and right thumb cyst. (R. at 115.) On March 12, 2001, Fortner underwent a laproscopic cholecystectomy and excision of thumb lesion. (R. at 115, 142-49.) On March 20, 2001, at a follow-up visit, Dr. Greene reported that Fortner was healing well and had no difficulty with seizures during the surgery or postoperative care. (R. at 115.) Fortner's right thumb had normal mobility and sensation. (R. at 115.) In December 2002, Fortner reported that she felt fine and that she had experienced only an "occasional light" seizure with confusion. (R. at 123.)

On October 16, 2003, Dr. Donald R. Williams, M.D., a state agency physician, indicated that Fortner had no exertional limitations. (R. at 152-59.) He indicated that Fortner could frequently climb stairs, stoop, kneel, crouch and crawl. (R. at 155.) He indicated that Fortner could occasionally balance and never climb ladders. (R. at 155.) No manipulative, visual or communicative limitations were placed on Fortner's work-related abilities. (R. at 155-56.) Dr. Williams indicated that Fortner should avoid working around machinery and heights. (R. at 157.) This assessment was affirmed by Dr. Frank M. Johnson, M.D., another state agency physician, on December 5, 2003. (R. at 159.)

In June 2003, Fortner reported to Dr. David E. Thompson, M.D., that she was doing okay and that she had not experienced any seizures. (R. at 166.) Dr. Thompson performed a complete physical in March 2004, and he reported normal findings. (R. at 164-65.) In January 2004, an EEG was performed and was found to be abnormal, indicating activities consistent with a seizure disorder. (R. at 163.) On May 20, 2004,

Dr. Thompson reported that he had reviewed the report from Dr. Muhammad Javed, M.D., dated April 27, 2004, and believed his findings and conclusions to be consistent with his own. (R. at 162.)

On April 27, 2004, Dr. Muhammad R. Javed, M.D., examined Fortner. (R. at 185-87.) Dr. Javed reported that Fortner was unable to drive as a result of her epilepsy. (R. at 186.) He also reported that Fortner should avoid working around aerosols, chemicals and dust because of asthmatic attacks. (R. at 186.) He completed a medical assessment indicating that Fortner could occasionally lift and carry items weighing up to 20 pounds and could frequently lift and carry items weighing up to 10 pounds. (R. at 188-90.) He also indicated that Fortner's abilities to stand, walk and sit were not impaired. (R. at 188-89.) Dr. Javed reported that Fortner could occasionally climb, stoop and balance, but never kneel, crouch or crawl. (R. at 189.) He reported that Fortner could not work around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity or vibration. (R. at 190.) He further reported that, on average, Fortner's impairments would cause her to be absent from work more than 2 days a month. (R. at 190.) On June 27, 2004, Dr. Javed reported that he believed Fortner's difficulties existed on or before September 30, 2002.[3] (R. at 182.)

### *III. Analysis*

The Commissioner uses a five-step process in evaluating disability in DWIB claims. *See* 20 C.F.R.§§ 404.335(c), 404.1505, 404.1520 (2005); *see also Heckler v.*

---

[3] The record indicates that Dr. Javed saw Fortner on only two occasions in 2004. (R. at 184-90.)

-7-

*Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether the claimant is 1) working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairment. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education and work experience, to perform alternative jobs which exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated October 4, 2004, the ALJ denied Fortner's claim. (R. at 14-21.) The ALJ found that the medical evidence established that Fortner suffered from a severe impairment, namely a seizure disorder, but he found that Fortner did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-21.) The ALJ found that Fortner retained the residual functional capacity to perform medium work which did

not require her to drive or work around heights or hazardous machinery and which did not require constant alertness or safety sensitive work. (R. at 18, 21.) Based on Fortner's age, education and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Fortner could perform jobs existing in significant numbers in the national economy, including those of a cashier, a private household cleaner, a kitchen worker, a food preparer, a maid, an assembler, a hand packer, a nonconstruction laborer, a counter sales clerk, an interviewer, a factory messenger, a production inspector and a production machine tender. (R. at 21.) Thus, the ALJ found that Fortner was not disabled under the Act and was not eligible for DWIB benefits. (R. at 21.) *See* 20 C.F.R. § 404.1520(g) (2005).

In her brief, Fortner argues that the ALJ erred by rejecting the assessment of Dr. Javed. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-8.) Fortner also argues that the ALJ erred by failing to find that her carpal tunnel syndrome was severe. (Plaintiff's Brief at 8-9.)

As stated above, it is this court's function to determine if substantial evidence exists in the record of this case to support the ALJ's findings. It is not this court's function to weigh the evidence, nor does this court have the authority to substitute its judgment for that of the Commissioner, if her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-40 (4th Cir. 1997).

Fortner argues that the ALJ erred by rejecting the opinion of Dr. Javed. (Plaintiff's Brief at 6-8.) Based on my review of the record, I find that substantial evidence exists to support the ALJ's rejection of Dr. Javed's assessment. The ALJ stated that he was rejecting Dr. Javed's opinion because Dr. Javed's diagnosis was based on Fortner's reported symptomatology without objective findings or laboratory reports in support thereof. (R. at 17.) The record shows that Fortner's seizure disorder is and was well-controlled with medication. (R. at 171-76, 179.) There is no evidence in the record to indicate that Fortner has had any major seizure event since the 1980s. While Fortner reported disabling asthma to Dr. Javed, the record indicates that in September 2000 and January 2001, Fortner had no shortness of breath, rales, wheezes or chest pain. (R. at 126-27.) In March 2001, she had a normal cardiac and pulmonary examination. (R. at 115.) In March 2004, Fortner reported that she had not had any flare-ups of her asthma and she had no chronic cough or chest pain. (R. at 164.) None of Fortner's treating or examining sources mentioned any treatment for alleged asthma attacks or that irritants were the source of any health problems for Fortner. Fortner was treated for nasal allergies in Feburary 2001 with allergy medication. (R. at 125.) There is no evidence in the record showing that she is disabled or even slightly impaired by her allergies. Furthermore, the issue in this case is Fortner's condition prior to September 30, 2002. However, Dr. Javed did not examine Fortner until April 27, 2004.

In addition, Fortner alleges disability as a result of carpal tunnel syndrome. While an EMG study from 1999 was positive for an injury consistent with carpal tunnel syndrome, there was no treatment, surgery or in-depth discussion about it by any treating source. (R. at 169.) In fact, Dr. Javed placed no limitations on Fortner's work-related abilities to reach, handle or feel as a result of carpal tunnel syndrome,

and there is no indication that he recommended surgery or referral to a specialist. (R. at 189.) Furthermore, Dr. Javed reported that Fortner had a history of degenerative arthritis in her low back, knees, feet and ankles and that she was taking Relafen for arthritis. (R. at 185-86.) The record is void of any diagnoses, x-rays or other laboratory findings which substantiate degenerative arthritis. The record shows that Fortner was first prescribed Relafen in January 2001, when she complained of back pain that had lasted a few weeks as a result of her activities caring for children. (R. at 126.) X-rays of Fortner's lumbar spine showed some osteophytic changes at the L2-L3 level. (R. at 138.) She was diagnosed with lumbar back pain. (R. at 126.)

The ALJ found that Fortner retained the residual functional capacity to perform medium work, which did not require her to drive or work around heights or hazardous machinery and which did not require constant alertness or safety sensitive work. (R. at 18, 21.) Based on my review of the record as discussed above, I find that substantial evidence supports this finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence supports the ALJ's rejection of Dr. Javed's assessment;

2. Substantial evidence supports the ALJ's finding that Fortner's carpal tunnel syndrome was not severe;

3. Substantial evidence supports the ALJ's finding as to Fortner's

-11-

residual functional capacity; and

4. Substantial evidence supports the ALJ's finding that Fortner was not disabled under the Act and was not entitled to benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Fortner's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 12th day of October, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE